Slip Op. 08-40

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY, : | |
| : | |
| Plaintiff, : | Before:    WALLACH, Judge |
| : | Court No.:    05-00592 |
| v.    : | |
| : | **PUBLIC VERSION** |
| UNITED STATES, : | |
| : | |
| Defendant. : | |

[Plaintiff's Motion for Summary Judgment is DENIED; Defendant's Cross-Motion for Summary Judgment is GRANTED; Plaintiff's Response and Cross-Motion for Summary Judgment is DENIED.]

Dated: April 11, 2008

Barnes, Richardson & Colburn, (Lawrence M. Friedman, William J. Murphy and Nicole Kehoskie Schude) for Plaintiff Archer Daniels Midland Company.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Amy M. Rubin); and Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of Counsel, for Defendant United States.

## **OPINION**

**Wallach, Judge:**

## I
## INTRODUCTION

This matter comes before the court on Plaintiff Archer Daniels Midland Company's

("ADM") Motion for Partial Summary Judgment, Defendant United States' Cross-Motion for

Summary Judgment, and Plaintiff ADM's Response and Cross-Motion.  The United States

1

Bureau of Customs and Border Protection ("Customs") classified entries of "deodorizer

distillate" in Harmonized Tariff Schedule of the United States ("HTSUS") subheading

3824.90.28 at 7.9% ad valorem. Plaintiff challenges the classification and contends that a 2002

amendment to Heading 3824 renders deodorizer distillate classifiable in Heading 3807 at 0.1%

ad valorem, or in the alternative, classifiable in the newly created duty-free provisions of

subheadings 3825.61 or 3825.90. Plaintiff filed this action pursuant to 28 U.S.C. § 2632. The

court has jurisdiction in accordance with 28 U.S.C. § 1581(a).

## II
## BACKGROUND

The subject merchandise is a substance commercially known as "vegetable oil distillate"

or "deodorizer distillate" ("DOD") and categorized under Chemical Services Abstract ("CAS")

Number 68476-80-2. ADM's Interrogatory Resp. ¶¶ 3, 9. DOD is a residue produced during the

process of refining soybean oil whereby vacuum distillation is utilized to remove undesirable

flavors and odors from an otherwise edible oil. Id. ¶ 3. The product is a chemical mixture

composed of 70-80% free fatty acids but also contains sterols and tocopherols and can embody a

number of other materials including tocotrienol, squalene and carotenoids. Id. ¶ 8.

Deodorization is the process by which steam strips crude soybean oil from volatile

materials under low atmospheric pressure and high temperature. Id. ¶ 10. Physically, DOD is a

translucent material with a brown, red, or yellow hue, which is solid at room temperature. Id. ¶

8. DOD is primarily used for the recovery of tocopherols and phytosterols, both of which are

further used for the production of tocopherol-based vitamin E products, purified phytosterols,

distilled methyl esters, vegetable distilled fatty acids, mixed vegetable fatty acids, and vegetable

2

oil residue. Id. ¶ 11.

On July 23, 2003, Plaintiff entered DOD through the port of Chicago. Memorandum in

Support of Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Response") at 1.

Customs classified the merchandise in subheading 3824.90.28 as:

> Chemical products and preparations of the chemical or allied industries (including
> those consisting of mixtures of natural products), not elsewhere specified or included:
> mixtures containing 5 percent or more by weight of one or more aromatic or modified
> aromatic substances: other.

HTSUS 3824.90.28 (2002).[1]

Customs' classification was consistent with the decision of this court in Cargill, Inc. v.

United States, 318 F. Supp. 2d 1279 (CIT 2004), although amendments had been made to

Chapter 38 since the importation of the deodorizer distillate at issue in Cargill. Memorandum in

Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") at 1.

In July 2004 Plaintiff filed a protest with an Application for Further Review contesting

Customs' classification of DOD in subheading 3824.90.28. Prior to January 1, 2002, subheading

3824.90.28 covered:

> Prepared binders for foundry molds or cores; chemical products and preparations of
> the chemical or allied industries (including those consisting of mixtures of natural
> products), not elsewhere specified or included; **residual products of the chemical or
> allied industries, not elsewhere specified or included: Other.**

HTSUS 3824.90.28 (2001) (emphasis added); see also Amended Complaint ¶ 31.

In the amended tariff schedule that went into effect on January 1, 2002, the language "residual

products of the chemical or allied industries, not elsewhere specified or included" was deleted

---

[1] At oral argument, Plaintiff agreed that DOD contains "5 percent or more by weight of one or more
aromatic or modified aromatic substances."

3

from the description for subheading 3824.90.28. Amended Complaint ¶ 30. At the same time,

Heading 3825 was created. Id. ¶ 33. Heading 3825 of the 2002 Harmonized Tariff Schedule

provides for:

> **Residual products of the chemical or allied industries, not elsewhere specified or included;** municipal waste; sewage sludge; other wastes specified in note 6 to this chapter: . . .

HTSUS Heading 3825 (2002) (emphasis added).

Plaintiff claimed that DOD would be properly classified in HTSUS 3825.61.00 which covers

"[o]ther wastes from the chemical and allied industries: Mainly containing organic constituents."

HTSUS 3825.61 (2002), see also Amended Complaint ¶ 18, Plaintiff's Motion at 1. In

Plaintiff's Amended Complaint, it also argues for classification in Heading 3807 as "vegetable

pitch," and in the alternative classification in subheading 3825.90 as "residual products of the

chemical or allied industries" other than the wastes specified in Heading 3825. Amended

Complaint ¶¶ 28, 41.

On March 10, 2005, Customs issued Ruling HQ 967288 in which it rejected Plaintiff's

proposed classification based on a finding that Heading 3825 is reserved for "environmentally

sensitive" or "hazardous" substances and therefore does not apply to DOD. Customs

Headquarters Ruling Letter No. 967288 (March 10, 2005) ("HQ 967288"); Amended Complaint

¶¶ 19-21. Customs determined that DOD is clearly a "by-product" of the chemical and allied

industries, but classifiable in Heading 3824 as a "chemical preparation" and not in Heading 3825

as a "residual product." HQ 967288 at 6. Customs noted that "residual products" for purposes of

Heading 3825 are "tantamount to waste product" and that DOD is not "the unadulterated 'left-

overs' of a manufacturing process." Id.

In defining the scope of Headings 3824 and 3825, Customs stated that prior to 2002 there had not been a need to distinguish between "chemical preparations" and "residual products" of the chemical and allied industries. HQ 967288 at 4. Customs acknowledged that neither term is defined in the HTSUS or the accompanying Explanatory Notes ("ENs") and therefore looked to the available legislative history for Heading 3825. Id. In the absence of House or Senate reports, Customs reviewed the papers and notes relating to the proposal of Heading 3825 at the 12th session of the Harmonized System Review Sub-Committee and its subsequent adoption by Presidential Proclamation. Id. (citing Presidential Proclamation 7515, 66 Fed. Reg. 66,549 (December 18, 2001)). Customs relied on the Sub-Committee's statements analogizing wastes to residual products of the chemical or allied industries. Id. Moreover, Customs stated that the Sub-Committee, at the suggestion of the U.S., only intended to create subheadings for waste products that were "(1) environmentally sensitive and whose transfrontier movement had to be monitored and (2) which were important in international trade." Id. at 5. Based on this, and on the Sub-Committee's comment that "'residual products of the chemical and allied industries' were in fact so nearly similar to other wastes that they should be classified in this new heading," id., Customs concluded that "residual products" for purposes of Heading 3825 refers only to products "that are environmentally sensitive wastes but can be remediated into a useful product." Id. Furthermore, Customs noted that the examples listed in the ENs of products classifiable in Heading 3825, see n.4 infra, resemble hazardous waste products and that the ENs to Heading 3824 indicate that not

all by-products were intended to be moved from Heading 3824.[2] Id.

On November 29, 2005, Plaintiff timely commenced this action seeking reliquidation of entries of the merchandise in issue and calculation of duties in accordance with Plaintiff's proposed tariff headings. Complaint ¶ 5. Plaintiff filed a Motion for Partial Summary Judgment seeking adjudication on the issue of whether Heading 3825 is limited to environmentally sensitive substances. Defendant cross-moved for summary judgment. Plaintiff responded and also submitted a cross-motion for summary judgment. In September 2006, Plaintiff filed a motion to amend its statement of material facts. Following an in-court conference, the court granted Plaintiff's motion and permitted Defendant to file a sur-reply relating to the amended version of Plaintiff's statement of material facts.

## III
## STANDARD OF REVIEW

An entry of summary judgment is appropriate when there are "no genuine issues as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In fact, on a motion for summary judgment, the court "may not resolve or try factual issues." Phone-Mate, Inc. v. United States, 12 CIT 575, 577 (1988), aff'd, 867 F.2d 1404 (Fed. Cir. 1989) (citing Yamaha Int'l Corp. v. United States, 3 CIT 108, 109 (1982)). Further,

---

[2]  The Explanatory Notes to Heading 3824 state, in pertinent part, that:

> The chemical products classified here are therefore products whose composition is not chemically defined, whether they are obtained as by-products of the manufacture of other substances (this applies, for example, to naphthenic acids) or prepared directly.

EN 38.24(B) (2002).

6

while a presumption of correctness attaches to Customs' classification pursuant to 28 U.S.C. §
2639(a)(1), "this presumption 'is irrelevant where there is no factual dispute between the
parties.'" Bousa, Inc. v. United States, 25 CIT 386, 387 (2001) (citing Rollerblade, Inc. v. United
States, 112 F.3d 481, 484 (Fed Cir. 1997)). Here, both parties agree that there are no disputed
issues of material fact, and therefore, the court will review, de novo, the scope and meaning of
the tariff terms at issue, which are purely questions of law. See Totes, Inc. v. United States, 69
F.3d 495, 497 (Fed. Cir. 1995); see also Rollerblade, Inc., 112 F.3d at 483.

Nor is Customs' ruling entitled to deference within the parameters of Skidmore v. Swift
& Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944). In Skidmore, the Supreme Court
held that an agency's determination, while not controlling on the court, is entitled to deference
given the "specialized experience and broader investigations and information" available to the
agency. Id. at 139; see also United States v. Mead Corp., 533 U.S. 218, 234, 121 S. Ct. 2164, 150
L. Ed. 2d 292 (2001). The amount of respect afforded "will depend upon the thoroughness
evident in its consideration, the validity of its reasoning, its consistency with earlier and later
pronouncements, and all those factors which give it the power to persuade, if lacking power to
control." Skidmore, 323 U.S. at 140. Here, Customs did not use any "specialized expertise" to
inform its finding in Ruling HQ 967288 and therefore needs not be afforded deference.
Customs' ruling does not have any other characteristics or factors which would give it the power
to persuade. Thus, the court has "independent responsibility to decide the legal issue regarding
the proper meaning and scope of the HTSUS terms." Franklin v. United States, 289 F.3d 753,
757 (Fed. Cir. 2002) (internal citations omitted).

The court employs a two-step analysis when deciding classification cases: "the first step

7

concerns the proper meaning of the tariff provisions at hand . . . . [T]he second step concerns whether the subject imports properly fall within the scope of the possible headings." Universal Elecs. Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997). The General Rules of Interpretation ("GRI") of the HTSUS and the Additional United States Rules of Interpretation guide the court's classification of goods imported into the United States. JVC Co. of Am. v. United States, 234 F.3d 1348, 1352 (Fed. Cir. 2000) (citing Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed.Cir.1999)). Absent legislative intent to the contrary, HTSUS terms are construed according to their common and commercial meanings, which are presumed to be the same. North Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001). In determining a tariff term's common meaning, the court may rely on its own understanding of the term and may "consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." Carl Zeiss, Inc., 195 F.3d at 1379. The court may also refer to the Explanatory Notes accompanying a tariff heading, which although not controlling, clarify the scope of the HTSUS subheadings and offer guidance in their interpretation. Franklin, 289 F.3d at 758; see also H.R. Conf. Rep. No. 100-576, 100th Cong., 2d Sess. 549 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582.

## IV
## ANALYSIS

The issue before the court is whether Customs properly classified deodorizer distillate under subheading 3824.90.28 notwithstanding the fact that the reference to "residual products" of the chemical or allied industries was severed from the heading. See HTSUS 3824.90.28 (2002). Plaintiff proposes that DOD is properly classified under Heading 3807 as "vegetable pitch" or, in

8

the alternative, under Heading 3825 as "other wastes of the chemical or allied industries mainly containing organic constituents" (subheading 3825.61) or as "residual products" of the chemical or allied industries (subheading 3825.90). See Plaintiff's Response at 6.

## A
## Classification Under Heading 3807

Heading 3807 is an eo nomine[3] provision which provides for:

> Wood tar; wood tar oils; wood creosote; wood naphtha; vegetable pitch; brewers' pitch and similar preparations based on rosin, resin acids or on vegetable pitch.

HTSUS Heading 3807 (2002).

The Explanatory Notes accompanying Heading 3807 in pertinent part describe "vegetable pitch" as follows:

> (C) Vegetable pitch.
>
> These are residues of the distillation or other treatment of vegetable materials. They include:
>
> (1) Wood pitch (wood tar pitch), a residue of the distillation of wood tar.
>
> (2) Rosin pitch, a residue of the preparation of rosin spirit and rosin oil by distillation of rosin.
>
> (3) Sulphate pitch, a residue after the distillation of tall oil, etc.
>
> These pitches are usually blackish-brown, reddish-brown or yellowish-brown. They generally soften with the heat of the hand. They are used, according to their type, for caulking ships, waterproof-coating of woven fabrics, impregnating woods, preparing anti-rust coatings, as binding materials, etc.

EN 38.07(C) (2002).

Plaintiff argues that the "common and commercial meaning" of vegetable pitch includes

---

[3] An eo nomine provision describes goods by name, in contrast to "use" provisions that describe merchandise by their use. Carl Zeiss, Inc., 195 F.3d at 1379.

deodorizer distillate. Plaintiff's Response at 9. Plaintiff relies on the dictionary definition of

"pitch" which states that "pitch, in the chemical-process industries, is the black or brown residue

obtained by distilling coal tar, wood tar, fats, fatty acids, or fatty oils." Id. (citing The New

Encyclopedia Britannica 474 (15th ed. 2002)). Plaintiff analogizes the physical appearance of

DOD and its uses to those of pitch and claims that the merchandise at issue falls within the

"commercial understanding" of vegetable pitch. Id. at 10. In addition, Plaintiff provides

affidavits that attest that DOD mimics the physical description provided in the ENs which

characterize vegetable pitch as "blackish-brown, reddish-brown or yellowish-brown" and a

substance that "generally soften with the heat of the hand." Id. at 11 (citing Furcich Aff. ¶ 11;

Collins Aff. ¶ 5; Hart Aff. ¶ 7).

Plaintiff also argues that the list of uses provided in the ENs is not exhaustive by the use

of the term "etc.," but that vegetable pitch has a "number of modern industrial uses," and that

DOD is used regularly as a substitute for "tall oil pitch" which is specifically covered by Heading

3807. Id. at 14. With respect to the uses listed in the ENs, Plaintiff argues that fatty acids, such

as methyl esters, which are extracted from DOD are further refined and used in the preparation of

anti-rust coatings, a use which is listed in the ENs. Id. at 15. Whereas DOD was previously

classified under Heading 3824, Plaintiff argues that classification in Heading 3807 is proper

because the court is required to classify the product in the tariff heading that either names the

product or its specific use. Id. at 16 (citing GRI 3(a)).

Defendant argues that DOD does not fall under Heading 3807 because "pitch" generally

is defined as a dark sticky substance derived from various wood tars. Memorandum in Support of

Cross-Motion for Summary Judgment ("Defendant's Cross-Motion") at 15-16. Defendant also

asserts that while Heading 3807 is an <u>eo nomine</u> and not a "use" provision, each of the definitions listed in the ENs describes various uses of pitch, and none of these correspond to the uses for DOD identified by Plaintiff in its interrogatory responses. <u>Id.</u> at 16. Defendant points out that the proposition that "merchandise must be classified in its condition as imported has been a basic tenet of customs law." Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment and Response to Plaintiff's Cross-Motion for Summary Judgment ("Defendant's Response") at 10 n.12. Moreover, Defendant contends that it does not appear from any of Defendant's research that DOD is ever referred to commercially as "vegetable pitch." Defendant's Cross-Motion at 16.

### The "Common and Commercial" Meaning of "Vegetable Pitch" Does Not Encompass Deodorizer Distillate

An <u>eo nomine</u> provision describes goods according to their "common and commercial meaning" and includes, without terms of limitation, all forms of the article. <u>See, e.g., Chevron Chem. Co. v. United States</u>, 23 CIT 500, 505 (1999). "When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is presumed to be its common meaning in the absence of evidence to the contrary." <u>Timber Prods. Co. v. United States</u>, 417 F.3d 1198, 1201 (Fed. Cir. 2005) (citing <u>Rohm & Haas Co. v. United States</u>, 727 F.2d 1095, 1097 (Fed. Cir. 1984)). A party who argues that a tariff term should not be given its common meaning "must prove that 'there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade.'" <u>Timber Prods. Co. v. United States</u>, 515 F.3d 1213, 1219 (Fed. Cir. 2008) (quoting <u>Moscahlades Bros. v. United States</u>, 42 CCPA 78, 82 (1954)). To the extent that Plaintiff claims the commercial meaning of "pitch" is something other than the

11

common meaning, the question for the court is whether ADM has overcome this presumption.

There is little judicial guidance on the "common and commercial meaning" of "vegetable pitch" for purposes of Heading 3807. Dictionaries do not define the term "vegetable pitch," but give meaning to the term "pitch." The dictionary definition of "pitch" is akin to the language found in the ENs to Heading 3807. For example, The American Heritage Dictionary defines pitch as "[a]ny of various thick, dark, sticky substances obtained from the distillation residue of coal tar, wood tar, or petroleum and used for waterproofing, roofing, caulking, and paving." The American Heritage Dictionary 1380 (3rd ed. 1996). Other dictionaries contain similar descriptions, describing pitch as:

> A tenacious resinous substance, of a black or dark brown colour, hard when cold, becoming a thick viscid semi-liquid when heated; obtained as a residuum from the boiling or distillation of tar, also from the distillation of turpentine; used to stop the seams of ships after caulking, to protect wood from moisture, and for other purposes.

The Oxford English Dictionary 915 (2d ed. 1989); or

> [A] soft substance that is obtained by distilling fats, fatty oils, or fatty acids (as from the manufacture of soap or candles), contains polymers and decomposition products, and is used chiefly in varnishes and paints and in floor coverings – called also fatty acid pitch, stearin pitch.

Webster's Third New International Dictionary 1724 (3rd ed. 1986).

"Vegetable pitch," is simply "pitch" but derived from a vegetable base, such as soy, or as described in the ENs, substances that are "residues of the distillation or other treatment of vegetable materials." EN 38.07(C) (2002). The common uses for "pitch" are, both according to dictionary definitions and the Explanatory Notes, caulking, waterproofing and the like.

For purposes of classifying DOD, it is apparent that the substance also is a residue of the distillation of vegetable materials and that DOD shares certain characteristics with various

12

pitches. For example, Plaintiff has furnished affidavits that attest to the physical characteristics of DOD as a yellowish-brown to reddish-brown substance which is viscous at room temperature or solid at lower temperatures and softens with the warmth of a hand, traits common to various pitches described both in dictionary definitions and in the ENs. See Hart Aff. ¶ 7; Collins Aff. ¶¶ 13-14. While the Explanatory Notes are not exhaustive when listing examples of vegetable pitch, DOD is not wood pitch, rosin pitch or sulphate pitch, as listed in the ENs. See EN 38.07(C) (2002). In fact, there is little similarity between vegetable pitch and DOD other than the fact that both are sticky brown substances that derive from a distillation process.

Moreover, the uses for "pitch" listed in dictionary definitions and in the Explanatory Notes do not comport with any of the applications for which Plaintiff uses DOD or for which DOD can be used. Plaintiff has submitted documentation to suggest that it primarily uses DOD for the recovery of tocopherols and phytosterols which are used in vitamin-E products in the pharmaceutical industry, in dietary supplements and as food additives. ADM Interrogatory Responses at ¶ 11. Other uses include purified phytosterols, distilled methyl esters, mixed vegetable fatty acids and vegetable oil residue. Id. None of these uses resemble caulking, waterproofing, or other commonly described "pitch" uses.

This fact, in conjunction with prevailing case law requiring that goods must be classified in the condition in which they are imported, contradict Plaintiff's proposed classification. Worthington v. Robbins, 139 U.S. 337, 341, 11 S. Ct. 581, 35 L. Ed. 181 (1891) ("The dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported."); see also Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citing United States v. Citroen, 223 U.S. 407, 414-15, 56 L.

13

Ed. 486, 32 S. Ct. 259 (1911)) ("It is well settled law that merchandise is classified according to its condition when imported."). While Plaintiff does not dispute that a product must be classified in its imported form, Plaintiff asserted at oral argument that there is little evidence of things specifically described as "pitch" in the Explanatory Notes being used to do anything in their imported form. Instead, Plaintiff attempts to establish a link between DOD usage and common "pitch" uses, stating that the production of fatty acids is used in the manufacture of printing ink, paints, and varnishes, which in turn are used in anti-rust coatings. See, e.g., Plaintiff's Response at 14-15; see also Hart Aff. ¶ 18. Because products must be classified "as imported," this link is insufficient.

Furthermore, there is no indication from Plaintiff's submitted materials, dictionary definitions or any other readily available information that DOD is commercially or commonly known, sold or traded as "vegetable pitch." In fact, in Plaintiff's own words, "the residue of deodorization is a complex mixture of chemicals known commercially as deodorizer distillate." Mayfield Aff. ¶ 12; see also Collins Aff. ¶ 5. Plaintiff has not successfully demonstrated that deodorizer distillate falls within the "common or commercial" meaning of vegetable pitch for purposes of HTSUS Heading 3807 or in the alternative, that a different commercial meaning of the substance exists which is "definite, uniform, and general throughout the trade" within the meaning of Timber Prods. Co., 515 F.3d at 1219.

## B
## Classification Under Heading 3825

On January 1, 2002, Chapter 38 was amended by Presidential Proclamation and Heading 3825 was created. Presidential Proclamation 7515, 66 Fed. Reg. 66,549 (December 18, 2001).

The language of Heading 3825 provides for:

> Residual products of the chemical or allied industries, not elsewhere specified or included; municipal waste; sewage sludge; other wastes specified in note 6 to this chapter.

HTSUS Heading 3825 (2002).

The two subheadings at issue, 3825.61 and 3825.90, refer respectively to "Other wastes from the chemical or allied industries: Mainly containing organic constituents" and "Residual products. . .: Other." HTSUS 3825.61, 3825.90 (2002). The Explanatory Notes accompanying Heading 3825 list five specific substances pertaining to residual products. These are (1) alkaline iron oxide; (2) residues from the manufacture of antibiotics; (3) ammoniacal gas liquors; (4) spent oxide;[4] and

---

[4]   (A) RESIDUAL PRODUCTS OF THE CHEMICAL OR ALLIED INDUSTRIES, NOT ELSEWHERE SPECIFIED OR INCLUDED

(1) Alkaline iron oxide for the purification of gas (in particular, coal-gas) containing impure ferric oxide, obtained as a by-product from one of the processes of the extraction of aluminium from bauxite. These by-products also contain sodium carbonate, silica, etc.

(2) Residues from the manufacture of antibiotics (called "cakes"), with a very low antibiotic content, suitable for use for the preparation of compound animal feeds.

(3) Ammoniacal gas liquors, produced as an aqueous portion settling out from the crude coal tar condensed from coal gas, and also by the absorption of ammonia in the waters used for washing coal. They are usually concentrated before transportation. They are brownish liquids and are used for the manufacture of ammonium salts (particularly ammonium sulphate) and purified and concentrated aqueous solutions of ammonia gas.

(4) Spent oxide. After the water-extraction of the greater part of its ammonia content, coal gas is chemically purified by passing it through a mass usually composed of bog iron ore or of hydrated iron(III)oxide, sawdust and calcium sulphate. This mass removes from the gas certain impurities (hydrogen sulphide, hydrocyanic acid, etc.). When spent, it contains a mixture of sulphur, Prussian blue, a small quantity of ammonium salts and other substances, and is known as spent oxide. It is usually in the form of powder or granules, greenish to brownish in colour, with a disagreeable odour, and is mainly used as a source of sulphur and cyanides (particularly Prussian blue) and as a fertiliser or an insecticide.

EN 38.25(A)(1)-(4) (2002).

15

(5) residues from the processing of power plant combustion off-gases.[5] EN 38.25(A)(1)-(4) (2002); EN 38.25(A)(5) (2007).

Note 6 to Chapter 38 which pertains to "other wastes" lists these as: (1) clinical wastes; (2) waste organic solvents; (3) wastes of metal pickling liquors; and (4) other wastes from chemical or allied industries. EN 38.25(D)(1)-(4) (2002).[6] Neither the HTSUS nor the

---

[5] The following was added in 2007:

> (5) Residues from the processing of power plant combustion off-gases by so called limestone gypsum flue gas desulphurisation (LG FGD). These residues are solid or in the form of a slurry and can be further processed and used as a substitute for natural gypsum in plasterboard manufacture. However, purified calcium sulphate isolated from these residues, is excluded (heading 28.33).

EN 38.25(A)(5) (2007).

[6]    (D) OTHER WASTES SPECIFIED IN NOTE 6 TO THIS CHAPTER

The heading also covers a wide variety of other wastes specified in Note (6) to this Chapter. They include:

> (1) Clinical waste which is contaminated waste arising from medical research, diagnosis, treatment or other medical, surgical, dental or veterinary procedures. Such waste often contains pathogens, pharmaceutical substances and body fluids and requires special disposal procedures (e.g., soiled dressings, used gloves and used syringes).

> (2) Waste organic solvents generally derived from cleaning and washing processes and containing mainly organic solvents, not fit for further use as presented as primary products, whether or not intended for recovery of the solvents.

Wastes containing mainly petroleum oils or oils obtained from bituminous minerals are excluded (heading 27.10).

> (3) Wastes of metal pickling liquors, hydraulic fluids, brake fluids and anti-freezing fluids not fit for further use as presented as primary products. They are generally used for recovery of the primary products.

However, the heading excludes ash and residues from waste of metal pickling liquors of a kind used for the recovery of metals or metal compounds (heading 26.20) and wastes of hydraulic fluids and brake fluids containing mainly petroleum oils or oils obtained from bituminous minerals (heading 27.10).

> (4) Other wastes from chemical or allied industries.

Explanatory Notes define the terms "residual products" or "other wastes from the chemical or allied industries."

Plaintiff argues that DOD is properly classified in Heading 3825 because the relevant language under which DOD had previously been classified was moved to Heading 3825 along with its accompanying Explanatory Notes. Plaintiff's Motion at 1, 12. Plaintiff contends that Heading 3825's applicability is not limited to environmentally sensitive products and that DOD qualifies as "waste" because it is a residual product of the chemical or allied industries. Id.; Plaintiff's Response at 28. Plaintiff contends that the legislative history upon which Customs relied in its denial of Plaintiff's protest is flawed because record discussions and negotiations of the World Customs Organization ("WCO") Sub-Committee may not be used for interpretative guidance of the HTSUS, and, that any such limitation would be arbitrary absent explicit guidance to importers. Plaintiff's Brief at 15. Indeed, Plaintiff points out that certain non-hazardous wastes, such as household and road wastes are included under the definition of "municipal waste" in Note 4 to Chapter 38, and certain toxic wastes are precluded by Note 6 to Chapter 38, negating the proposition that all items classified under Heading 3825 must be environmentally sensitive. Id. at 6-7.

Defendant's argument parallels Customs' interpretation of the scope of the tariff term, and implies a limitation on the applicability of Heading 3825 to environmentally sensitive or hazardous substances. Defendant's Cross-Motion at 20 (citing Ex. E). While acknowledging that the legislative history in question is not legally binding, Defendant's argument relies exclusively on conclusions and recommendations formulated by the Harmonized System Review Sub-

---

EN 38.25(D) (2002).

Committee concerning the scope of Heading 3825. Id. Defendant argues the absence of any

other legislative history and the express agreement by the Sub-Committee that the provision

covers only environmentally sensitive waste products, is sufficient to support its position. Id.;

Defendant's Response at 13. Defendant suggests that determining whether a substance is

environmentally sensitive should be done on a case-by-case basis by an inquiry into whether its

"disposal, treatment and transport is controlled to protect the environment." Defendant's

Response at 13-14.

### 1
### Heading 3825 is not Limited to "Environmentally Sensitive" or "Hazardous" Substances

GRI 1 states that "classification shall be determined according to the terms of the

headings and any relative section or chapter notes. . ." GRI 1. The language of Heading 3825 and

the accompanying Explanatory Notes do not impose an express limitation on the heading to

include only environmentally sensitive or hazardous substances. Plaintiff correctly states that the

appropriate legislative history on which this court must rely for interpretive guidance does not

impose an environmental limitation on Heading 3825. See, e.g., Plaintiff's Motion at 11; see also

EM Indus. v. United States, 22 CIT 156, 163 (1999) (noting that the WCO's official

interpretation of the HTSUS are the Explanatory Notes); Lonza, Inc. v. United States, 46 F.3d

1098, 1109 (Fed. Cir. 1995). In fact, the International Trade Commission ("ITC") is obligated by

law to keep the HTSUS under continuous review and recommend modifications to the President

on an ongoing basis. 19 U.S.C. § 3005(a)-(c)). The ITC may take into account decisions issued

by the WCO, the WCO's Harmonized System Committee, and U.S. Customs in making their

recommendation. See, e.g., Proposed Modification to the Harmonized Tariff Schedule of the

United States, Investigation No. 1205-5 (Final), Pub. 3430 at 5 (June 2001).

Here, neither the reports detailing the modification to Chapter 38 nor Presidential Proclamation 7515, contain explicit language that limits Heading 3825 to environmentally sensitive materials. See 66 Fed. Reg. 66,549. Indeed, as Plaintiff points out, "such a major qualification" would most likely warrant a notice and comment period pursuant to 19 U.S.C. § 3005(b). See Plaintiff's Motion at 12. Plaintiff cites to Cummins, Inc. v. United States, 454 F.3d 1361 (Fed. Cir. 2006) for the proposition that a WCO opinion may at most be entitled to "respectful consideration," but the court, according to controlling case law, may consult any number of sources to inform its decision concerning the scope of a tariff term, absent unambiguous statutory language and legislative history to the contrary. See, e.g., Carl Zeiss, Inc., 195 F.3d at 1379 (Fed. Cir. 1999). Accordingly, the court may look to interpretive guidance where found.

In this instance, it seems clear from the available information that the intent of the Harmonized System Review Sub-committee to the Committee may have been to limit the applicability of Heading 3825 to environmentally sensitive products, or waste products. However, in the formulation and adoption of the provision by the U.S., any such qualification was not adopted. First, it would have been logical to include any such qualification in the statutory language of the HTSUS or, at minimum, in the Explanatory Notes. Second, imposing such a limitation is likely to cause confusion for importers because no objective standards have been set concerning what for example, qualifies as an "environmentally sensitive" or "hazardous" substance for purposes of Heading 3825. Third, no agency was designated to provide any such guidelines, nor is it obvious that all substances detailed in the Explanatory

19

Notes are necessarily environmentally sensitive.[7] Indeed, in an attempt to define what constitutes "environmentally sensitive materials," the government cites to a state sanitation code. Defendant's Response at 13. Such haphazard and varying definitions do not provide adequate guidance to commercial importers of goods seeking to classify chemically complex substances and waste products in Heading 3825, nor is it sufficient that individual substances in the ENs are already regulated the U.S. Environmental Protection Agency ("EPA"), when some are not.[8]

Consequently the scope of Heading 3825 is not limited to substances and products that are environmentally sensitive or hazardous. Congress may wish to amend the provision if it was indeed intended to be limited in such a fashion. However, Federal courts, except in highly unusual circumstances, must decline "to act where Congress has not." Lynteq, Inc. v. United States, 976 F.2d 693, 697 (Fed. Cir. 1992) (citing Denkler v. United States, 782 F.2d 1003, 1008 (Fed. Cir. 1986) ("Should Congress wish to extend the [statutory scope], it knows how to do so."). It is not a court's role to read in legislative intent where none is found, or attribute meaning to HTSUS provisions that would result in arbitrary and unpredictable results.

---

[7] For example, "municipal waste" is defined in the ENs to Heading 3825 as "waste of a kind collected from households, hotels, restaurants, hospitals, shops, offices, etc. . . ." EN 38.25(B) (2002). The Explanatory Notes elaborate further on the definition of "municipal waste," noting that such waste "generally contains a large variety of materials such as plastics, rubber, wood, paper, textiles . . . and other damaged or discarded articles." The designation of such items as "environmentally sensitive" or "hazardous" is within the discretion of local municipalities; there is no uniform federal standard designating municipal waste as environmentally sensitive.

[8] "Sewage sludge," as identified in the ENs to Heading 3825(C), is covered by specific EPA regulations. Other substances are not. See EN 38.25(C) (2002).

20

**2**
**Deodorizer Distillate is Not Properly Classified in Subheading 3825.61 as "Waste"**

Plaintiff's chief argument for classifying DOD in subheading 3825.61 is that DOD

qualifies as a "waste product" under controlling case law. Plaintiff's Motion at 9 (citing

Webster's Third New International Dictionary 1931-32, 2580 (3rd ed. 2002); Plaintiff's

Response at 26-28. Absent a clear definition of "waste" in the HTSUS or the ENs, Plaintiff

relies on the court's definition of "waste" in E.T. Horn Co. v. United States, 945 F.2d 1540, 1543

(Fed. Cir. 1991). Plaintiff's Response at 26 (citing E.T. Horn Co., 945 F.2d at 1543).

There the court defined "waste" as "manufactured articles which have become useless for

their original purpose . . . and fit only for remanufacture into something else." Id. Plaintiff also

cites to Precision Specialty Metals v. United States, 24 CIT 1016, 1037 (2000) to argue that the

court defined waste by a threshold question of whether the merchandise was "purposely

produced" or required "re-manufacture" prior to exportation. Id. at 27. Plaintiff notes that oil

refineries are "not in business to produce deodorizer distillate for its tocopherol or any other

content," and that its relative value, as compared to the primary products derived from soybeans

(soybean meal and crude soybean oil), is insignificant. Id. at 5. In fact, Plaintiff characterizes its

production of DOD "a reasonable cost recovery effort, akin to recycling spent material." Id. at 6.

Defendant argues that DOD cannot be considered "waste" because it is a "purposely

sought by-product" of soybean oil production which is "manipulated to maximize the tocopherol

level." Defendant's Cross-Motion at 24; see also Defendant's Response at 17. Defendant

challenges Plaintiff's characterization of DOD under E.T. Horn Co., arguing that DOD is not a

manufactured article, and that DOD, albeit a residue of soybean oil manufacturing, is a product in

its own right which "has an actual use and does not become 'useless' even if that use is not exploited." Defendant's Response at 19.

"Waste" is a broad term which is for example defined as "damaged, defective, or superfluous material produced during the or left over from a manufacturing process or industrial operation; material not usable for the ordinary and main purpose of manufacture." Webster's Third New International Dictionary 2580 (3rd ed. 2002). This comports with the court's definition of "waste" in E.T. Horn as a "useless" product. E.T. Horn, 945 F.2d at 1543.

Applying E.T. Horn here, Plaintiff fails to demonstrate that DOD is "manufactured", and that despite the multiple applications for which DOD is used the product is "useless" and has to undergo "re-manufacturing" in order to become usable. As the court said, "[because] something is a residue of a process does not automatically render the substance waste, entitled to entry duty-free. Changes in technology or demand can and do render what was once waste matter which is sought for its own sake." Id. Whereas Plaintiff claims that DOD is of little fiscal value as compared with the main oil products it distills, the mere fact that Plaintiff continues to extract DOD for sale is indicative that it is purposely sought, and not merely a waste product "useless for [its] original purpose." Id. Moreover, whether a substance is classifiable as "waste" is not linked to the financial worth of the product. Although it is obvious that DOD is an invariable by-product of soybean distillation, the argument that DOD is not "specifically sought" is refuted by Plaintiff's own admission that "[t]he market demands for vitamin E and other by-products obtained from DOD determines whether ADM will purchase and import DOD from its overseas suppliers." (Hart Aff. ¶ 12). This statement is indicative that Plaintiff not only "comes upon" DOD as a residue of oil distillation, but that DOD is purchased and imported in its own right for

22

a specific and unrelated purpose. Accordingly, the court rejects Plaintiff's proposed

classification of DOD in subheading 3825.61.00.

3

### Deodorizer Distillate is Not Properly Classified under Subheading 3825.90 as a "Residual Product"

In the alternative, Plaintiff argues that DOD is classifiable as a "residual product" or "by-

product" of the manufacture of soybean oil and that the substance is properly classified under

subheading 3825.90. Plaintiff's Motion at 9 (citing Webster's Third New International

Dictionary 1931-32, 2580 (3rd ed. 2002)); Plaintiff's Response at 28-29. Plaintiff concedes that

the term "residual products" is not defined in the HTSUS or the ENs to any relevant section, but

advocates that the terms are best construed by their "plain, unqualified meanings." Plaintiff's

Motion at 12. In addition, Plaintiff asserts that DOD is properly classified in subheading 3825.90

because it is a "basket provision" which was not intended to be limited to the substances listed in

the ENs. Plaintiff's Response at 29.

Defendant argues that the Explanatory Notes limit the scope of subheading 3825.90 to

encompass only the residual products listed and therefore precludes classification of DOD in this

provision. Defendant's Cross-Motion at 26-27; Defendant's Response at 23. Defendant contends

that no language in the subheading indicates that the provision be interpreted as open-ended, and

that the specific addition of another substance in 2007, illustrates this. Defendant's Cross-Motion

at 26-27.

The question is whether "residual products" under Heading 3825 encompasses DOD.

Dictionary definitions speak to "residual products" as a type of "by-products," which currently

are also covered by Heading 3824. See EN 38.24(B); see also discussion Section IV(C) infra. In

23

Customs' ruling, it held that "residual products" for purposes of Heading 3825 are "tantamount to waste products," and therefore not inclusive of DOD. HQ 967288 at 5. According to dictionary definitions and the court's articulation in Cargill, the terms "residual products" and "by-products" are often used interchangeably. See Cargill, 318 F. Supp. 2d at 1290. Therefore classification of DOD in subheading 3825.90 does not turn on whether the court finds that DOD is a "residual product" or a "by-product." The proper inquiry is whether subheading 3825.90 is a basket provision, and whether the subheading is limited to the substances listed in the accompanying Explanatory Notes.

The Explanatory Notes to subheading 3825.90 list four specific substances under "residual products of the chemical or allied industries," namely alkaline iron oxide, residues from the manufacture of antibiotics, ammoniacal gas liquors and spent oxide, to which a fifth was added in 2007. EN 38.25 (2007). While recognizing that the Explanatory Notes were only meant as a guide in defining HTSUS tariff terms, there is no indication that other residual products were meant to be included in this provision. See Bausch & Lomb, 21 CIT 166, 174, 957 F. Supp. 281, 288 (1997) ("[the Explanatory Notes are] generally indicative of proper interpretation of the various provisions of the Convention . . . ."). Whereas subheading 3825.90 mimics the language of a "basket provision"[9] by containing the language "not elsewhere specified or included" and "other," Plaintiff's argument that subheading 3825.90 is a basket provision is not persuasive in light of the limited nature of the language in the Explanatory Notes. The ENs do not contain any

---

[9] "Basket or residual provisions of HTSUS Headings . . . are intended as a broad catch-all to encompass the classification of articles for which there is not a more specifically applicable subheading." Rollerblade, Inc. v. United States, 282 F.3d 1349, 1354 (internal citations omitted).

language indicating that other substances may be included, as is its function as a basket provision

for the merchandise at issue largely negated by the existence of Heading 3824. Heading 3824

specifically provides for chemical mixtures akin to DOD and the ENs explicitly encompass by-

products of an unspecified chemical composition. Indeed, the addition of a fifth substance in the

2007 version of the HTSUS, again without the use of terms such as "etc." or other language

indicative that the list is inclusive of other, unnamed substances, suggests that the subheading

was intended to be limited only to the listed substances. Accordingly, DOD is not properly

classified as a residual product under subheading 3825.90.

C

**Classification Under Subheading 3824.90.28 is Proper Because DOD is a "Chemical Preparation" Obtained as a By-Product Whose Composition is Not Chemically Defined**

Customs classified DOD, entered by Plaintiff, in Heading 3824, subheading 3824.90.28.

Subheading 3824.90.28, after its amendment on January 1, 2002, provides for:

> Prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included: Mixtures containing 5 percent or more by weight of one or more aromatic or modified aromatic substances: Other.

HTSUS 3824.90.28. (2002).

The Explanatory Notes to Heading 3824 provide in pertinent part:

> (B) CHEMICAL PRODUCTS AND CHEMICAL OR OTHER PREPARATIONS
>
> . . .
>
> The chemical products classified here are therefore products whose composition is not chemically defined, whether they are obtained as **by-products of the manufacture of other substances** (this applies, for example, to naphthenic acids) or prepared directly.

EN 38.24(B) (2002).

Customs' classification was consistent with this court's decision in Cargill, 318 F. Supp. 2d 1279 (CIT 2004), although the language of Heading 3824 in effect at the time the merchandise in Cargill was entered included a provision for "residual products of the chemical or allied industries." Cargill, 318 F. Supp. 2d at 1282. In Cargill the court did not need to distinguish between "chemical products and preparations" and "residual products of the chemical or allied industries," but held that classification in subheading 3824.90.28 was proper because "deodorizer distillate is undisputedly a by-product of a chemical or allied industry." Id. at 1290. Recognizing that the Cargill court was not faced with the issue of whether DOD was best classified as a "by-product" or "residual" product, Customs in its ruling found that the merchandise is more aptly described as a "chemical preparation" in Heading 3824 than a "residual product" in Heading 3825, although it conceded that neither were defined in the HTSUS or the accompanying ENs. HQ 967288 at 4. Customs found that eliminating "residual products" from Heading 3824 did not indicate an intent to preclude by-products from classification in Heading 3824. Id. at 5. Indeed, Customs points to the ENs to Heading 3824 which specifically provide for "chemical products . . . obtained as by-products from the manufacture of other substances," and the list provided in the Explanatory Notes in which naphthenic acids are listed as "by-products of the refining of certain petroleum oils and of certain oils obtained from bituminous minerals." Id. (citing EN 38.24(B)(1) (2002)). Customs also offered the dictionary definition of the term "preparation" as "a substance . . . prepared for a specific purpose." Id. (quoting Webster's II New College Dictionary 1789 (3rd ed. 1991)).

Plaintiff argues that DOD is not classifiable in Heading 3824, because it is better defined as a "waste" or "residual product" in Heading 3825. Plaintiff's Motion at 22. Plaintiff refutes

26

Defendant's distinction between Heading 3824 and 3825 which implies that by-products may be commercially valuable and residual products may not, citing examples of named substances in Heading 3825 that are both valuable and further manufactured substances. Id. at 22-23. Additionally, Plaintiff contends that DOD is of lessened value in light of regulations that require manufacturers to leave higher levels of tocopherol in the edible oil, but that the substance is an unavoidable residue resulting from soybean distillation. Id. at 23-24.[10] Plaintiff argues that the real distinction between Heading 3824 and 3825 turns on whether the "merchandise is useful in its condition as generated in the production of something else." Id. at 24. Plaintiff notes that napthenic acid appears to have an immediate practical application, whereas DOD is prepared from oil residue via the process of steam stripping, and that tocopherols are then further extracted for the use in vitamin-E products. Id. at 24-25.

Defendant argues that Customs properly classified DOD under Heading 3824, its reasoning mirroring that of Customs. Defendant's Cross-Motion at 18. In response to Plaintiff's attempt to distinguish the two headings at issue, Defendant argues that the distinction is not properly illustrated by napthenic acid, as this substance also requires further manufacturing and therefore disproves Plaintiff's theory. Id. at 25. Moreover, Defendant argues that the focus of the court's enquiry must be whether the substance qualifies as a by-product, as opposed to a waste product. Id.

Classifying merchandise under a "basket" provision is only appropriate when no other tariff terms cover the product more specifically. EM Indus., Inc., 22 CIT at 165 (1998) ("basket" or "residual" provisions are intended as broad catch-all tariff terms for which "there [are] no

---

[10]  At oral argument, Defendant indicated that it does not dispute this characterization.

more specifically applicable subheadings."). Basket provisions are generally only used where other applicable provisions have been excluded. See Rollerblade, Inc., 282 F.3d at 1354.

> Deodorizer distillate is properly classifiable as:
>
> Chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included: Mixtures containing 5 percent or more by weight of one or more aromatic or modified aromatic substances: Other.

HTSUS 3824.90.28.

The Explanatory Notes to Heading 3824 define such products as those "whose composition is not chemically defined, whether they are obtained as by-products of the manufacture of other substances." EN 38.24. Plaintiff submitted affidavits that attest to the fact that "[d]eodorizer distillate is a complex mixture of approximately 10% sterols and steryl esters, and approximately 10% tocopherols (collectively 'aromatic'); mixed fatty acids (approximately 70-80%), including glycerides, hydrocarbons, oleic acid, stearic acid, linoleic acid, linolenic acid; and organic compounds including herbicides, pesticides, insecticides, dissolved gases, moisture, and other general impurities." (Mayfield Aff. ¶ 16). Plaintiff conceded that "there are no formal specifications of the composition of DOD, which is dependent on the source of the vegetable material and processing conditions," (Hart Aff. ¶ 8), and that "[t]he residue of deodorization is a complex mixture of chemicals . . . ." (Collins Aff. ¶ 5). These statements suggest that DOD qualifies as a chemical product or preparation with a non-specific chemical composition.

While Plaintiff agrees that DOD is a by-product of soybean distillation, it contends that not all by-products are classifiable in Heading 3824. Plaintiff's Response at 24-25; see also The American Heritage Dictionary of the English Language (4th ed. 2000) (a by-product is

28

"something produced in the making of something else"). This assertion is clearly validated by the creation of Heading 3825, which refers to "residual products" that may also be construed as a type of "by-product." However, because subheading 3825.90 is limited to the residual products listed, classification of DOD in subheading 3824.90.28 is proper. Thus, because DOD is not properly classified in Heading 3807, subheading 3825.61, or subheading 3825.90, and in lieu of a more specific provision, Customs properly classified entries of DOD in subheading 3824.90.28.

## V
## CONCLUSION

For the foregoing reasons Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Response and Cross-Motion is DENIED. Accordingly, Customs' classification of deodorizer distillate, CAS Number 68476-80-2, in HTSUS subheading 3824.90.28 is AFFIRMED.

/S/     Evan J. Wallach
_____
Judge

Dated: April 11, 2008
     New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

ARCHER DANIELS MIDLAND
COMPANY,

                Plaintiff,

    v.

UNITED STATES,

                Defendant.

Before:      WALLACH, Judge
Court No.:   05-00592

## ORDER AND JUDGMENT

      This case having come before the court upon the Partial Motion for Summary Judgment filed by Plaintiff Archer Daniels Midland Company ("Plaintiff's Motion"), Cross-Motion for Summary Judgment filed by Defendant United States ("Defendant's Motion"), and Response and Cross-Motion filed by Plaintiff ("Plaintiff's Response and Cross-Motion"); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

      ORDERED, ADJUDGED and DECREED that Plaintiff's Motion is DENIED; and it is further

      ORDERED, ADJUDGED and DECREED that Defendant's Motion is GRANTED; and it is further;

      ORDERED, ADJUDGED and DECREED that Plaintiff's Response and Cross-Motion is DENIED; and it is further

      ORDERED, ADJUDGED and DECREED that the imported item at issue in this case is properly classified under Heading 3824, Subheading 3824.90.28 of the Harmonized Tariff Schedule of the United States (2002), at a duty of 7.9% ad valorem; and it is further

      ORDERED, ADJUDGED and DECREED that judgment be, and hereby is, entered in favor of Defendant and against Plaintiff; and it is further

1

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Friday, April 18, 2008, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter. The parties shall suggest alternative language for any portions they wish deleted. If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before April 18, 2008.


/S/      Evan J. Wallach
_____
Judge


Dated: April 11, 2008
      New York, New York

2

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: May 1, 2008

By: /S/ Geoffrey Goell
Deputy Clerk